## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

MARK ALLEN et al.,

                            Plaintiffs,


v.

                                              Civil No.  20-2380 (JRT/KMM)

3M COMPANY and AEARO
TECHNOLOGIES LLC,

                            Defendants.

---

JOSEPH CAVINS et al.,

                            Plaintiffs,


v.

                                              Civil No.  20-2408 (JRT/KMM)

3M COMPANY and AEARO
TECHNOLOGIES LLC,

                            Defendants.

---

JEFFREY ABRAMS JR. et al.,

                            Plaintiff,


v.

                                              Civil No.  20-2419 (JRT/KMM)

3M COMPANY and AEARO
TECHNOLOGIES LLC,

                            Defendants.

---

OLIVER BOLOTIN et al.,

                 Plaintiffs,

v.

                                       Civil No.  20-2481 (JRT/KMM)

3M COMPANY and AEARO
TECHNOLOGIES LLC,

                Defendants.

---

MICHAEL BODEAU et al.,

                 Plaintiffs,

v.

                                         Civil No.  20-2506 (JRT/KMM)

3M COMPANY and AEARO
TECHNOLOGIES LLC,

                Defendants.

---

JEFF BROWN et al.,

                 Plaintiffs,

v.

                                       Civil No. 20-2643 (JRT/KMM)

3M COMPANY and AEARO
TECHNOLOGIES LLC,

                Defendants.

---

CYNTHIA CLERK et al.,

                 Plaintiffs,

v.

                                       Civil No. 20-2691 (JRT/KMM)

3M COMPANY and AEARO
TECHNOLOGIES LLC,

                Defendants.

CASEY BAKER et al.,

                          Plaintiffs,

v.

                                              Civil No. 21-100 (JRT/KMM)

3M COMPANY and AEARO
TECHNOLOGIES LLC,

                          Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTIONS TO REMAND**

Daniel E. Gustafson and Amanda M. Williams, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402; Alicia N. Sieben, Matthew James Barber, and William R. Sieben, **SCHWEBEL GOETZ & SIEBEN PA**, 80 South Eighth Street, Suite 5120, Minneapolis, MN 55402, for plaintiffs;

Benjamin W. Hulse, Jerry W. Blackwell, and S. Jamal Faleel, **BLACKWELL BURKE PA**, 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415 for defendant 3M Company;

Faris Rashid, **GREENE ESPEL PLLP**, 222 South Ninth Street, Suite 2200, Minneapolis, MN 55402, for defendant Aearo Technologies LLC.

Plaintiffs wore Combat Arms Earplugs, Version 2 (the "CAEv2"), manufactured by Defendants 3M Company and Aearo Technologies (collectively, "3M"), to protect against loud and damaging sounds. Plaintiffs claim that 3M failed to provide adequate instructions and warnings concerning how to properly wear the CAEv2 and, as a result, they now suffer from hearing loss and/or tinnitus. Plaintiffs therefore filed actions in Minnesota state court, alleging a single product liability claim for failure to warn. 3M

removed Plaintiffs' actions, arguing that the Court has jurisdiction based on several grounds. Plaintiffs ask the Court to remand for lack of subject matter jurisdiction.

Because of the Court's earlier rulings in related cases, 3M is precluded from asserting the two federal defenses and Article IV jurisdiction. Additionally, 3M fails to establish that the Twentynine Palms military base is a federal enclave. In sum, the Court lacks subject matter jurisdiction over Plaintiffs' claims, and the Court will therefore grant Plaintiffs' Motions to Remand.

## BACKGROUND

### I. FACTUAL BACKGROUND

#### A. *Allen*, *Abrams*, *Bolotin*, *Bodeau*, *Brown*, *Clerk*, and *Baker* Actions

The Plaintiffs in these actions are civilians who wore the CAEv2 when performing tasks that exposed them to loud, high-pitched noises, such as landscaping, operating heavy machinery, shooting guns, or working at concert venues. (*See, e.g.*, ECF 20-2506, Bodeau Compl. ¶¶ 37–38, 49–50, 69–70, 109–10, 117–18, Dec. 10, 2020, Docket No. 1-1.) Plaintiffs allege that they never received instructions to fold back the third flange of the CAEv2 earplug or a warning that the earplug would be ineffective if they did not do so and, as a result, they now suffer from hearing loss and/or tinnitus. (*See, e.g.*, *id.* ¶¶ 39–40.)

#### B. *Cavins* Action

The three Plaintiffs in this action are current or former servicemembers who wore the CAEv2 when exposed to loud, high-pitched noises while stationed at Twentynine Palms military base in California or while deployed overseas.  (*See, e.g.*, ECF 20-2408, Cavins Compl. ¶¶ 10–14, Nov. 30, 2020, Docket No. 1-1.)  Each alleges that he never received instructions to fold back the third flange of the CAEv2 earplug or a warning that the earplug would be ineffective if he did not do so and, as a result, he now suffers from hearing loss and tinnitus.  (*See, e.g.*, *id.* ¶¶ 15–16.)  Plaintiffs Cavins and Fuller aver that they first became aware of their hearing loss and tinnitus while at Twentynine Palms.  (ECF 20-2408, Letter at 1, Ex. A at 4, 6, Mar. 16, 2021, Docket No. 23–1.)  Plaintiff Rollins avers that he first became aware of his hearing loss and tinnitus while deployed overseas. (Letter at 1, Ex. A at 8.)

## II.  PROCEDURAL BACKGROUND

Plaintiffs filed their actions in Minnesota state court, alleging that 3M failed to instruct or warn them regarding how to properly fit and safely wear the CAEv2.  (*See, e.g.*, Bodeau Compl. ¶¶ 185–99; Cavins Compl. ¶¶ 59–73.)  3M subsequently gave notice of removal, arguing that the Court has subject matter jurisdiction over the civilian claims based upon the government contractor defense, (*see, e.g.,* ECF 20-2506, Bodeau Notice of Removal at 3, Dec. 10, 2020, Docket No. 1), and over the servicemember claims based upon (1) the government contractor defense, (2) the combatant activities exception, (3) Article IV jurisdiction, and (4) federal enclave jurisdiction, (ECF 20-2408, Cavins Notice of

Removal at 3, Nov. 30, 2020, Docket No. 1.)  Plaintiffs then filed Motions to Remand for lack of subject matter jurisdiction.  (*See, e.g.*, ECF 20-2506, Bodeau Mot. to Remand, Dec. 23, 2020, Docket No. 9; ECF 20-2408, Cavins Mot. to Remand, Dec. 30, 2020, Docket No. 9.)

## DISCUSSION

### I.  STANDARD OF REVIEW

A defendant may remove a civil action to federal court only if the action could have been filed originally in federal court.  *See* 28 U.S.C. § 1441(a); *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000).  "A defendant is not permitted to inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law."  *Gore*, 210 F.3d at 948 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).  Instead, as the party seeking removal and opposing remand, a defendant bears the burden of establishing federal subject matter jurisdiction.  *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).  All doubts about federal jurisdiction must be resolved in favor of remand.  *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007).

### II.  ANALYSIS

#### A.  Government Contractor Defense, Combatant Activities Exception, and Article IV

In related cases, the Court previously concluded that 3M failed to raise a colorable government contractor defense, *Graves v. 3M Co.*, 447 F. Supp. 3d 908, 916 (D. Minn.

2020) (civilians); *Bischoff v. 3M Co.*, No. 20-1984, 2021 WL 269076, at *5 (D. Minn. Jan. 27, 2021) (servicemembers), and failed to raise the combatant activities exception as a colorable defense, *Copeland v. 3M Co.*, No. 20-1490, 2020 WL 5748114, at *3 (D. Minn. Sept. 25, 2020) (civilians); *Bischoff*, 2021 WL 269076, at *6 (servicemembers).  The Court also previously concluded that Article IV jurisdiction was lacking with respect to certain combat areas overseas, as 3M failed to show that the United States exercised exclusive sovereignty over these areas and, most important, failed to show that Congress affirmatively acted to regulate them.  *Sultan v. 3M Co.*, No. 20-1747, 2020 WL 7055576, at *9 (D. Minn. Dec. 2, 2020).

Given that 3M has already litigated these jurisdictional grounds—grounds identical to the ones asserted here—and that the Court issued final judgments remanding the actions back to state court because the Court found that jurisdiction pursuant to the government contractor defense, the combatant activities exception, and Article IV[1] was lacking, 3M is precluded from asserting these grounds here.  *See Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007); *see also Sandy Lake Band of Mississippi Chippewa v. United*

---

[1] While 3M filed an exhibit here that was not filed in the earlier cases—one demonstrating that L. Paul Bremer was appointed by President Bush as Presidential Envoy to Iraq subject to the authority, direction, and control of the Secretary of Defense, (ECF 20-2408, 1st Decl. Benjamin W. Hulse ¶ 5, Ex. 1 at 4–6, Mar. 10, 2021, Docket No. 22)—it has no bearing on the Court's earlier conclusion that Article IV jurisdiction is lacking.  *See* U.S. Const. art. IV, § 3, cl. 2 ("**Congress** shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States[.]").

*States*, 714 F.3d 1098, 1102–04 (8th Cir. 2013) (precluding a party from asserting a basis for subject matter jurisdiction that had already been adjudicated and found lacking). Accordingly, the Court lacks subject matter jurisdiction over the claims alleged in the *Allen*, *Abrams*, *Bolotin*, *Bodeau*, *Brown*, *Clerk*, and *Baker* actions and over Plaintiff Rollins's claims in the *Cavins* action.

**B. Federal Enclave**

Generally, exclusive federal jurisdiction is conferred over land within a state when (1) the United States purchases or condemns the land for the erection of forts, magazines, arsenals, dockyards, and other needful buildings; (2) the state legislature consents to the exclusive jurisdiction of the federal government over the land, and (3) the federal government accepts this grant of jurisdiction by filing a notice of acceptance with the governor or in a manner prescribed by the laws of the state. *See* U.S. Const. Art. I, § 8, cl. 17; 40 U.S.C. § 3112(b); *Paul v. United States*, 371 U.S. 245, 264 (1963).

However, not all land owned by the United States has been acquired by purchase or condemnation, as some land was ceded to the United States by foreign countries. Such is the case here, as the land in dispute was acquired by the United States from Mexico pursuant to the Treaty of Guadalupe Hidalgo in 1848, and then retained by the United States as public domain land when California became a state in 1850.[2]

---

[2] (ECF 20-2408, Decl. of Daniel E. Gustafson ¶ 4, Ex. B ("Frey Decl.") ¶ 7, Dec. 30, 2020, Docket No. 13-1.)  The Frey Declaration was originally submitted in a separate

In such cases, instead of consenting to exclusive federal jurisdiction over land, a state must cede exclusive jurisdiction over the land to the United States. *Ft. Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 526–27 (1885). Until such a cession, the United States possesses only the rights of an ordinary proprietor unless federal jurisdiction was reserved by Congress upon the state's admission. *Id.* at 527. Furthermore, a state may always condition its cession of jurisdiction, and the conditions must be met for the United States to obtain exclusive jurisdiction.[3] *See Paul*, 371 U.S. at 264–65.

As relevant here, California enacted a cession statute in 1897, which ceded exclusive jurisdiction over "all lands within this State now held, occupied, or reserved by the [United States] for military purposes or defense, or which may hereafter be ceded or conveyed to said United States for such purposes; provided, that a sufficient description by metes and bounds and a map or plat of such lands be filed in the proper office of the

---

action, *Swift v. Tatitlek Support Servs., Inc.*, No. 15-1718, 2016 WL 11604973 (C.D. Cal. Oct. 26, 2016). Both parties, however, rely on its factual assertions and 3M has stated that it agrees with Frey's findings concerning the land's history. As such, the Court will similarly draw from it to trace this history.

[3] Conditioning cession cannot be done in a way "inconsistent with the effective use of the property for the public purposes intended." *Chicago, R.I. & P. Ry. Co. v. McGlinn*, 114 U.S. 542, 546 (1885). While neither party raises this issue, the Court notes that the California cession statutes do not contain any conditions inconsistent with using federal lands in the state as military bases.

record in the county in which the [lands] are situated."  Cal. Stat. ch. 56 at 51, 51–52 (1897) (codified as Cal. Gov't Code § 114).[4]

Section 114 was in effect until 1947 when it was repealed and replaced by § 126. Cal. Stat. ch. 1532 at 3163 (1947) (codified as Cal. Gov't Code § 126).[5]  For the United States to obtain exclusive jurisdiction, § 126 required the State Land Commission (the "Commission") to find and declare, after a public hearing, that certain express conditions existed and that the United States' "acquisition" of land was in California's interest, and to file these findings and declarations with the Secretary of State and in the office of the relevant county recorder.  *Id.* at 3164.  The California legislature amended § 126 in 1953 to redefine "acquisition" to include "lands owned by the United States that are included in the military reservation by presidential proclamation or act of Congress" in addition to lands acquired by purchase, condemnation, or leasehold.  Cal. Stat. ch. 1856 at 3647, 3648 (1953).[6]

---

[4]                         Available                         at https://slcprdwordpressstorage.blob.core.windows.net/wordpressdata/legislative_jurisdiction/statutes/Stats.%201897,%20ch.%2056,%20%C2%A7%C2%A7%201-2,%20p.%2051.pdf.

[5]                         Available                         at https://www.slc.ca.gov/legislative_jurisdiction/statutes/Stats.%201947,%20ch.%201532,%20%C2%A7%C2%A7%201-4,%20p.%203163.pdf.

[6]                         Available                         at https://slcprdwordpressstorage.blob.core.windows.net/wordpressdata/legislative_jurisdiction/statutes/Stats.%201953,%20ch.%201856,%20%C2%A7%201,%20p.%203647.pdf.

Regarding the Twentynine Palms base, the lands relevant to the dispute were withdrawn from the public domain in 1942 and 1959.[7]  When § 114 was in effect, the United States was required to file a sufficient description by metes and bounds and a map or plat of such lands with the proper county recording office to gain exclusive jurisdiction over federal land.  3M fails to demonstrate that the United States ever did such a required filing with respect to the withdrawn lands.

Once § 126 took effect, the Commission was required to find and declare, after a public hearing, that certain express conditions existed and to file these findings and declarations with the Secretary of State and in the proper county recording office for the United States to obtain exclusive jurisdiction over federal land.  3M fails to demonstrate that the Commission ever followed this requirement with respect to the withdrawn lands.

3M thus fails to demonstrate that California ceded exclusive jurisdiction over the disputed Twentynine Palms lands.  Furthermore, 3M fails to demonstrate that the United States accepted any purported grant of jurisdiction over these lands, which is required no matter how land is originally acquired, and there is a conclusive presumption against exclusive jurisdiction in the absence of any such acceptance.  40 U.S.C. § 3112(c); *Paul*, 371 U.S. at 264–65.

---

[7] (Frey Decl. ¶¶ 9–10, 12; ECF 20-2408, 2nd Decl. of Benjamin W. Hulse ¶ 6, Ex. 3 at 12, Mar. 16, 2021, Docket No. 25-1.)  Other lands previously sold or granted and then reacquired in the 1950s and 1960s, (Frey Decl. ¶ 8), are not relevant to the dispute.

While 3M did file a 1943 letter from the Secretary of War accepting jurisdiction over certain lands, this letter has no bearing on the lands considered here. Section 3112 clearly states that the head of a department or agency can only accept jurisdiction over land "under the immediate jurisdiction, custody, or control of [that] individual," 40 U.S.C. § 3112(b), and the lands in question here were property of the Defense Plant Corporation, a subsidiary of the Reconstruction Finance Corporation, not the Department of War. 7 Fed. Reg. 489 (Jan. 23, 1942); 7 Fed. Reg. 3252 (May 1, 1942); *see also Reconstruction Fin. Corp. v. J.G. Menihan Corp.*, 312 U.S. 81, 83 (1941) (explaining the origins, makeup, and functions of the Reconstruction Finance Corporation).

3M attempts to avoid these jurisdictional roadblocks by asserting that Congress reserved exclusive jurisdiction over lands already owned by the United States when California was admitted into the Union. However, the admission statute says nothing about jurisdiction; instead, it merely requires that California "shall never interfere with the primary disposal of the public lands within its limits, and shall pass no law and do not act whereby the title of the United States to, and right to dispose of, the same shall be impaired or questioned;" and shall not tax or assess public domain lands. Act for the Admission of the State of California into the Union, ch. 50, 9 Stat. 452, 452–53 (1850). As such, the Court expressly rejects this argument.[8]

---

[8] 3M's other arguments fare no better. First, it cites to *Kleppe v. New Mexico*, 426 U.S. 529 (1976), for the proposition that a mere withdrawal of land from the public

In sum, while the United States has proprietorial jurisdiction over the Twentynine Palms base,[9] the Court finds that the United States does not exercise exclusive legislative jurisdiction over the land upon which it sits and, thus, the base is not a federal enclave. *Accord Swift v. Tatitlek Support Servs., Inc.*, No. 15-1718, 2016 WL 11604973, at \*14 (C.D. Cal. Oct. 26, 2016). Accordingly, the Court lacks subject matter jurisdiction over Plaintiff Cavins's and Plaintiff Fuller's claims as well.

## CONCLUSION

3M is precluded from raising the government contractor defense, the combatant activities exception, and its construction of overseas Article IV jurisdiction as grounds for removal. Additionally, the Twentynine Palms base is not a federal enclave. Accordingly, the Court concludes that it lacks subject matter jurisdiction over Plaintiffs' claims and will therefore grant Plaintiffs' Motions to Remand.

---

domain confers exclusive federal jurisdiction over the land. 3M misreads *Kleppe*, which actually stated that the congressional act under question "does not establish exclusive federal jurisdiction over the public lands in [the state]." *Id.* at 545. In fact, *Kleppe* did not even involve an enclave question. *Id.* at 541–42. 3M then cites to cases that considered the question of whether a state or federal forum was more appropriate for claims arising on an enclave. *Federico v. Lincoln Mil. Hous.*, 901 F. Supp. 2d 654, 672 (E.D. Va. 2012); *Akin v. Big Three Indus., Inc.*, 851 F. Supp. 819, 821–22 (E.D. Tex. 1994). Here, no such enclave exists and this question is therefore irrelevant. Furthermore, 3M has not demonstrated that the United States has partial or concurrent jurisdiction over the land, as either would have to have been ceded by the state as well. *Kleppe*, 426 U.S. at 541–42.

[9] The Court notes that its conclusion concerning the United States' proprietorial-only interest in the Twentynine Palms land accords with both the General Services Administration's 1962 conclusion and the Department of Navy's 1992 conclusion. (Frey Decl. ¶ 28, Exs. 19 & 20 at 75–79; Frey Decl. ¶ 29, Ex. 21 at 86–90.)

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Plaintiffs' Motions to Remand:

     1.   Allen et al., CV20-2380, Docket No. 10;

     2.   Cavins et al., CV20-2408, Docket No. 9;

     3.   Abrams et al., CV20-2419, Docket No. 9;

     4.   Bolotin et al., CV20-2481, Docket No. 9;

     5.   Bodeau et al., CV20-2506, Docket No. 9;

     6.   Brown et al., CV20-2643, Docket No. 9;

     7.   Clerk et al., CV20-2691, Docket No. 9;

     8.   Baker et al., CV21-100, Docket No. 7;

are **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  March 24, 2021
at Minneapolis, Minnesota.

                         JOHN R. TUNHEIM
                            Chief Judge
               United States District Court